Appeal of **THE KINSMAN TRANSIT COMPANY.**                     Docket No. 67.

In determining the value as of March 1, 1913, of bulk freight vessels in use on the Great Lakes, where the method of valuation is the cost of reconstruction new less depreciation from the date the vessel was built, the rate of depreciation to be applied should be based upon the history of the particular vessel prior to the basic date; and where a formula for computing depreciation or a flat rate of depreciation is alleged to represent the amount of depreciation sustained, its application to the particular property under consideration must be proved by the evidence.

Submitted November 19, 1924; decided January 31, 1925.

*Tracy H. Duncan* and *Wisner W. White, Esqs.,* for the taxpayer.

*S. Duffield Mitchell, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

FINDINGS OF FACT.

The Kinsman Transit Company is an Ohio corporation and appeals from a proposed assessment of income and profits taxes for the calendar years 1917 and 1919 as set forth in the Commissioner's letter mailed June 27, 1924, and amended as to 1919 by letter mailed August 26, 1924.

The taxpayer is engaged in the transportation of bulk freight upon the Great Lakes in what are known as bulk freight steamers. On March 1, 1913, the taxpayer was the owner of four such steamers named *Henry Steinbrenner, Anna C. Minch, Philip Minch,* and *Matthew Andrews.* The additional tax herein results from the value as of March 1, 1913, of said four vessels as fixed by the Commissioner, and the allowance for depreciation and obsolescence computed thereon.

In computing the March 1, 1913, value of these vessels both the taxpayer and the Commissioner used the cost of reconstruction new as of March 1, 1913, less depreciation from the time each vessel was built, to that date, and the difference as representing the March 1, 1913, value. An extensive hearing was had before the Commissioner at which the taxpayer presented its evidence and, in computing the depreciation sustained to March 1, 1913, the Commissioner upon the evidence before him, has used a flat rate of 3 per cent per year based upon a useful life of 33⅓ years; the taxpayer contends for a formula based upon progressive depreciation, at the rate of 1 per cent for the first 5 years, 2 per cent for the second 5 years, and 3 per cent for the succeeding 10 years. None of the vessels is more than 20 years old and the formula has not been extended beyond that period.

It is stipulated that reconstruction cost new at March 1, 1913, and date of construction of each of the vessels is as follows:

| Vessel. | Reconstruction cost. | Date built. |
|---|---|---|
| Henry Steinbrenner | $277, 620 | November 1, 1901. |
| Anna C. Minch | 261, 320 | May 21, 1903. |
| Philip Minch | 327, 810 | May 15, 1905. |
| Matthew Andrews | 373, 350 | April 15, 1907. |

No testimony has been presented to the Board tending to show the actual depreciation sustained by the above vessels between the date of construction and the basic date of March 1, 1913, or the application of the taxpayer's formula to the vessels here under consideration, and the only question before the Board is whether the method employed by the Commissioner in computing depreciation for the purpose of ascertaining value is .proper.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

MARQUETTE: The taxpayer herein has appealed from a determination of the Commissioner proposing to assess additional taxes for the years 1917 and 1919. The additional taxes result from the action of the Commissioner *in fixing the value as of March 1, 1913*, of four bulk freight steamers operated by the taxpayer on the Great Lakes. The method of valuation adopted by the taxpayer and the Commissioner was the cost of reconstruction new as of March 1, 1913, less depreciation sustained from the date when the vessels were built. Both parties are agreed upon the reconstruction cost as of March 1, 1913, and the difference between them arises from the method used to calculate the depreciation to be deducted to March 1, 1913, in determining the value as of that date. The Commissioner, upon the evidence before him, has deducted a flat rate of 3 per cent a year based upon a useful life of 33⅓ years; the taxpayer contends that vessels do not depreciate at a flat rate but that the depreciation is progressive over the life of the vessels and has, in its evidence, presented a formula prepared by a marine engineer of large experience, corroborated by the testimony of other experts based upon their observation over a period of years, to the effect that the actual incidence of physical depreciation in property of this character is 1 per cent per year during the first 5 years; 2 per cent per year during the second 5 years, and 3 per cent per year during the next 10 years. This formula has been applied by the taxpayer to the reconstruction cost of its vessels as of March 1, 1913, and it is claimed that such reconstruction cost less the depreciation thus computed represents the value of the vessels as of that date.

We have no evidence before us pertaining to the amount of depreciation sustained by the particular vessels under consideration prior to March 1, 1913, or of the applicability of the formula thereto. The testimony adduced by the taxpayer is in the form of affidavits by experts and is general in character. The Commissioner has stipulated that the witnesses, if present, would testify to the matters set forth in their respective affidavits.

The following excerpt from the affidavit of H. A. Merriman, an engineer of 25 years' experience upon the Great Lakes in building and designing ships of the kind under consideration, expresses the reasons inducing his conclusions, and in effect contains the basic reasons set forth in the other affidavits. He says:

When the vessel is new she is not only sound in all her parts but those parts are properly proportioned to bear their share of the strains and so

each part aids the other; but as the vessel is subjected to successive strains and repairs, one part and then another weakens, each in turn lessening the support it should give to other parts. Then, too, repairs do not give back the full strength to the repaired part in all cases and as the repairs increase this failure to give back full support to other parts is increased. Damages to the structure are frequent in the Lake trade. The repairs to these damages, while apparently adequate and substantial, are generally made by the removal of the damaged material, rerolling or reconditioning of same, and replacement of the original material. It is obvious, therefore, that the parts removed or disturbed, which have been subjected to the treatment described, will set up a depreciation that was not present in the early years of the vessel's life.

In addition to the depreciation due to repairs, these vessels are subjected to very hard use in unloading and the continued pounding of the clamshell buckets in the cargo holds tends to crystallize that part of the structure.

Further, the continued vibration of the entire structure, due to the propelling machinery and heavy seas, has a tendency to crystallize the material. An investigation of this point was made by English experts some years ago and brought to light disturbance in the materials especially around rivet holes, which required renewal of plates at many places in the vessel's structure.

It will be seen, therefore, that this crystallization is an increasing factor as the vessel grows older, thereby influencing the rate of depreciation that should be used in determining the physical depreciation.

No testimony was introduced by the Commissioner relating to the actual depreciation of this species of property or of the particular vessels in question, and we are left to draw our conclusions from that presented by the taxpayer. The Commissioner apparently relies upon the fact that from all the evidence adduced before him he was justified in applying a flat rate of depreciation based upon the estimated life of the property which, when deducted from the reconstruction cost new on March 1, 1913, represented the value as of that date as nearly as it could be determined.

There are a number of methods of computing depreciation which lead to widely different results and each method has its particular advocates. Experts themselves admit that it is a guess even when based upon inspection or relevant facts, yet we are asked to adopt a formula which can be applied to bulk freighters as a theoretical yardstick in measuring the depreciation sustained by them over a period of years, without any showing of the actual depreciation sustained by the particular vessels herein. This we decline to do, and the reason therefor must be obvious. Assume two vessels in all respects alike, launched at the same time and costing the same amount. Due to accidents, use or abuse, neglect of repairs, and the numerous hazards incident to navigation, at the end of ten years one of the vessels may be ready for the scrap heap, while ordinary prudence in the use of the other and freedom from accidents may keep down depreciation to the minimum. If, however, we apply the formula suggested, both vessels would be of equal value at the end of any particular period, and the same result would ensue from the application of a flat rate of theoretical depreciation. We are not prepared to countenance such results. The value of any vessel at a particular time is a question of fact which must be proved by competent evidence. The reconstruction cost less actual depreciation sustained is important evidence of value and has in it important elements to prove either the market value or actual value; but depreciation is ordinarily something to be concretely determined by inspection, and in determining the rate of depreciation to be applied to property of the character herein for the purpose of ascertaining value as of a

particular date in the past, it is highly important that the history of the vessel, the character of repairs, the actual use to which the vessel has been put, and all relevant facts tending to show the depreciation sustained be placed before us, and upon these facts, assisted by the testimony of such expert witnesses as may be produced, a fair judgment can be exercised as to the amount of depreciation sustained which will more nearly approximate the actual depreciation sustained than the application of a formula or flat rate of theoretical depreciation which only serves to produce grotesque results.

The testimony of the taxpayer's witnesses, excerpts from which we have quoted, goes to show that all of the above facts are important in arriving at depreciation, and all of them, working together or singly, may have a large influence upon the amount of depreciation which will occur over and beyond repairs and replacements made. Weaknesses, no doubt, are developed in some vessels which do not appear in others and crystallization may take place in one more rapidly than in another. In fact, every use to which a ship is put may have its effect upon the amount of depreciation sustained, and it is not a fair criterion to measure the depreciation of one ship by the depreciation of another which may have had a totally different history, and we do not think any formula has been, or can be, devised, which by its application will in any case approximate the fact, unless it is purely accidental.

As we have heretofore said, no evidence is before us with respect to the depreciation sustained by the particular vessels in controversy, and we have no knowledge as to the character of the testimony which was presented before the Commissioner, other than the affidavits which we have quoted. These are of general application and have no reference to the depreciation sustained by the taxpayer's vessels. The effort has been to secure the adoption of a general formula which can be applied to all vessels of the character described herein, which, when applied to the reconstruction cost new, will give the value of every vessel as of the specified date, without evidence showing the actual depreciation. Depreciation is a matter of judgment, and must be determined from evidence rather than by mathematics or formulas. The Commissioner has exercised a judgment from the evidence before him and has determined that a flat rate represents the depreciation sustained. It may be that from all the testimony he was justified in applying a flat rate based upon the life of the property, and, for aught we know, that rate may have fairly represented the actual depreciation sustained. We are not in a position to dispute his judgment. We think that *as evidence of value*, where the reconstruction cost less depreciation is used, that cost, less the *actual* depreciation sustained, more nearly represents the *actual value* at a given time than a formula or flat rate based upon useful life, if arbitrarily applied. Both methods employed are open to serious objections in ascertaining value as of March 1, 1913, and the application of either method, without evidence to show that it fairly represents the depreciation actually sustained, may lead to unjust results to the one party or the other. It is our opinion that in determining value as of a particular date of property of the character herein, cost less theoretical depreciation, or reconstruction cost less theoretical depreciation, does not necessarily prove either the actual or market value and may not even approximate such values.

We are therefore constrained to reject the formula presented by the taxpayer herein for determining the depreciation its vessels had sustained to March 1, 1913, as no evidence is before us tending to show that it represents the depreciation in its vessels, and we can not say that the Commissioner's determination was wrong or that the rate of depreciation applied did not, from the evidence before him, fairly reflect the value of the taxpayer's vessels as of March 1, 1913. The determination of the Commissioner is therefore approved.