## APPEAL OF GEORGE S. SCOVILLE.

Docket No. 2443. Submitted April 27, 1925. Decided October 6, 1925.

At March 1, 1913, the taxpayer had a lease which expired December 31, 1923. The taxpayer had made extensive improvements upon the leased property prior to March 1, 1913. *Held*, that the fair value of the lease at March 1, 1913, was $70,000, and that the unextinguished cost of the lease at January 1, 1919, was $36,762.82.

*Benjamin Mahler, Esq.*, for the taxpayer.
*Laurence Graves, Esq.*, for the Commissioner.

Before JAMES, SMITH, and TRUSSELL.

This appeal is from the determination of a deficiency in income tax for 1919 in the amount of $4,138.45.

### FINDINGS OF FACT.

Under date of December 13, 1907, the taxpayer leased property at Coney Island, New York City, from January 1, 1908, to December 31, 1917, at an annual rental of $6,000 per year for the first five years of the term and of $7,000 per year for the balance of the term. There were located upon the property at the time that it was leased a hotel and certain bathhouses. The size of the lot was approximately 200 feet by 600 or 800 feet. The taxpayer, soon after leasing the property, spent a considerable amount of money in grading and filling in the land and in erecting bathhouses, bungalows, and other buildings. He sublet some of these buildings and derived annually from rentals during the period 1910 to 1913 approximately $9,000. He also derived income from the operation of the hotel and bathhouses. His net income from these operations during the first five years of the term of the lease was from $15,000 to $20,000. In a schedule attached to the taxpayer's 1918 income-tax return the various improvements upon the property are listed and given a total cost and value as of January 1, 1914, of $58,146.17. No exception was taken to the finding of the Commissioner of the value of the improvements at that date of $58,146.17.

In 1912 the taxpayer contemplated the erection of additional buildings upon the property and negotiated with the lessor for an extension of the lease. He was granted a six-year extension by an indenture dated April 23, 1912, the rental to be paid during the extended term to be at the rate of $9,000 per annum. The taxpayer had a net income for the year 1913 of approximately $20,000 and the business was operated profitably from that date up to and including the year 1918.

The lease of December 13, 1907, contained a provision "that no assignment of this lease made without the written assent of the said party of the first part shall operate in any way to release or exonerate the party of the second part [lessee] of or from any obligation imposed upon him by this instrument."

With the consent of the lessor, the taxpayer entered into an agreement for the sale of the lease in the latter part of 1918. The purchasers paid the taxpayer $59,575 for his rights under the lease. They secured from the lessor a new lease under date of January 1, 1919, which new lease was to expire December 31, 1933. The rental to be paid under the new lease was at the rate of $12,000 per annum.

In his income-tax return for 1919 the taxpayer reported a profit upon the sale of the lease of $8,283.18. This amount was arrived at in the following manner:

Cost of improvements made upon the leased premises to Mar. 1, 1913_ $58,146.17
Value of improvements as of that date in excess of cost_____  20,000.00
                                                                    _____
    Value of lease and improvements at Mar. 1, 1913_____    78,146.17
Depreciation to Dec. 31, 1916_____ $15,138.75
Depreciation in 1917_____  5,707.80
Depreciation in 1918_____  6,007.80
                                                         _____
                                                                    26,854.35
                                                                    _____
    Depreciated cost or value Jan. 1, 1919_____    51,291.82
    Net profit on sale_____     8,283.18

The fair value of the lease, including improvements made upon the land by the lessee at March 1, 1913, was $70,000.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 15 days' notice, in accordance with Rule 50.

### OPINION.

SMITH: In his income-tax return for 1919 the taxpayer reported a net profit of $8,283.18 upon the sale of a lease in 1919 for a net consideration of $59,575. In the determination of the net profit the taxpayer added to the depreciated cost of the improvements upon the leased property at January 1, 1919 ($31,291.82), $20,000. The Commissioner has disallowed this addition to the depreciated cost of the improvements upon the leased premises and has computed the profit from the sale of the lease at $28,283.18.

In his appeal the taxpayer alleges errors on the part of the Commissioner in determining a deficiency in tax for 1918 as follows:

(1) The failure to allow the March 1, 1913, value of the leasehold for purposes of determining profit on the sale thereof and for the purpose of determining exhaustion accrued thereon.

(2) Failure to allow good will value as of March 1, 1913.

(3) Failure to allow a discount for notes received in part payment of the consideration for the sale and in valuing these notes at market, and that such market value was equal to the face thereof.

The taxpayer's books of account have been lost and it is impossible to determine from any records now in the taxpayer's possession the cost of the improvements to March 1, 1913. The taxpayer had the books of account at the time his return for 1918 was made up, and a schedule attached to that return shows the cost of the improvements at January 1, 1914, as having been $58,146.17. The taxpayer took no exception to the finding of the Commissioner that the cost of the improvements to March 1, 1913, was the same amount. At the hear-

ing counsel for the taxpayer contended, however, that the lease on the property expiring December 31, 1923, had a value on March 1, 1913, of more than $58,146.17, and claimed that the value, inclusive of the improvements, was $70,000.

The evidence shows that the taxpayer had a valuable lease. He had made extensive improvements upon the leased premises from the beginning of the term of the lease. Not only were the hotel and bathhouses operated profitably but he derived a large income from subrenting buildings which he had placed upon the property. His income from subrentals by 1912 was approximately $9,000 per year. His net income from the property was from $15,000 to $20,000 per year. By reason of the interest which he had taken in building up the properties the lessor was willing to rent the premises to him at a less amount than he would have rented to any other tenant.

From all of the evidence adduced at the hearing, the Board is of the opinion that the market value of the lease at March 1, 1913, inclusive of the improvements, was $70,000, the amount contended for by the taxpayer.

It is to be noted, however, that the lease is subject to an exhaustion deduction under the Revenue Act of 1918. *Appeal of Grosvenor Atterbury*, 1 B. T. A. 169. In his income-tax returns prior to 1919 the taxpayer claimed depreciation upon improvements made on the leased premises in the total amount of $26,854.35. This amount does not include anything for exhaustion of the value of the lease in excess of the value of the improvements. The Board finds that the value of the lease was $11,853.83 in excess of March 1, 1913, value of the improvements, and this value is exhaustible over the term of the lease, 10 years and 10 months from March 1, 1913. The remaining value of the improvements and excess value of the lease at January 1, 1919, the date of sale, was $31,291.82 for the improvements and $5,471 for the excess value of the lease, total $36,762.82. The sale price of the lease, including improvements, was $59,575. The taxpayer realized a profit upon the sale of the lease in 1919 of $22,812.18 instead of $8,283.18, the amount shown on taxpayer's original return.

The only evidence which the taxpayer submitted with respect to a good-will value as at March 1, 1913, was the net income of the taxpayer from his business operations and the fact that the lessor was willing to rent his property to Scoville at a less rental than he would have rented it to any other tenant. A finding of a good-will value can not be predicated upon such evidence.

In 1919 the taxpayer sold his rights under his lease for $65,000, of which amount $5,425 was commission on the sale. The purchasers paid one-third of the purchase price in cash, the other two-thirds being payable over a period of three years with notes payable

semiannually. The notes were paid off at maturity. No evidence was introduced that the notes at the time of receipt had a cash value less than their face value. In the opinion of the Board, the Commissioner made no error in holding that the notes were the equivalent of cash to their face value upon receipt by the taxpayer in 1919.

ARUNDELL not participating.