APPEAL OF TIBBY-BRAWNER GLASS CO.

Docket No. 2860.   Submitted July 6, 1925.   Decided October 19, 1925.

Evidence *held* insufficient to prove value of assets.

*Franklin C. Parks, Esq., E. A. Ford Barnes, C. P. A.,* and *J. J. Dyer, C. P. A.,* for the taxpayer.
*B. G. Simpich, Esq.,* for the Commissioner.

Before GREEN and MORRIS.

The issue in this appeal is the right of the taxpayer to a paid-in suplus and depreciation disallowed by the Commissioner with a resulting deficiency in the sum of $9,071.97 for the year 1919.

### FINDINGS OF FACT.

The Tibby-Brawner Glass Co. is a Pennsylvania corporation with its principal office at Punxsutawney. It was originally organized under the name of the Wightman Glass Corporation and its name was changed in 1919. The Wightman Glass Co., situated in the same place, had gone into bankruptcy and, through some process not disclosed by the record, the plant and equipment of the Wightman Glass Co. became the property of the Chamber of Commerce of Punxsutawney. The Chamber of Commerce, being anxious to stimulate manufacturing in the community, offered to donate the plant and equipment to some corporation that would take it over and operate it. Pursuant to the offer the Wightman Glass Corporation was organized with a paid-in capital stock of $15,000 and the plant and equipment were transferred to it. The taxpayer claims the right to include the value of the plant and equipment in its invested capital as paid-in surplus and to take depreciation thereon. The Commissioner concedes the right to include such value, if established, in its paid-in surplus, and the right to take depreciation thereon, but contends that the value has not been proven or established.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

GREEN: The taxpayer sought to establish the value of the plant and equipment by the introduction of a retrospective appraisal of the real estate, buildings, and equipment, which purported to fix the sound value thereof. A representative of the appraisal company was on the witness stand and testified as to the preparation of the appraisal. This witness stated that in determining the value of the real estate he had interviewed a number of persons in the vicinity of the property. He, himself, was unable to qualify as an expert and the Board sustained the Commissioner's objection to the evidence relative to valuations on the real estate. Cross examination by counsel for the Commissioner and examination by members of the Board disclosed that the witness depended, to a large extent, upon statements of others, and that to such extent the appraisal was clearly hearsay. Only as to a very few items was he able, in any measure, to qualify as an expert. According to the witness he determined first the replacement value of the assets as of the date of acquisition by the taxpayer, and from such replacement value he determined the sound value.

The following questions and answers are illustrative of the weakness of this appraisal:

Q. Have you, to any extent whatever, considered the market value of this property or of any of the assets, or have you simply computed the sound value?

A. The sound, replacement and sound value.

Q. No market value?

A. No.

Q. Is there any relationship between sound value, as you found it and testified to it and cash values as of January 1, 1916; that is, is one necessarily influenced by the other?

A. Not necessarily, no.

In the recent *Appeal of The Rockford Malleable Iron Works*, 2 B. T. A. 817, we had occasion to discuss a similar appraisal at some length. That discussion is in the main equally applicable to this appraisal. We have in this case the additional fact that the Wightman Glass Co. became a bankrupt. This in itself indicates the probability of a material disparity between *sound value* fixed in the appraisal and in the then *market* or *sale value*. The appraisal was the only evidence offered as to the value of the plant and equipment, and it is far from being sufficient to overcome the presumption of the correctness of the Commissioner's determination and to serve as a basis either for a paid-in surplus or for depreciation.