PADUCAH WATER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 6055.   Promulgated January 11, 1927.

*Virgil Y. Moore, Esq.*, and *Andrew T. Smith, Esq.*, for the
petitioner.

*A. H. Fast, Esq.*, for the respondent.

Deficiencies of income and profits taxes of $999.74 for 1919,
$700.30 for 1920, and $1,529.26 for 1921; so much being in con-
troversy as arises from an alleged undervaluation by respondent of
petitioner's plant on March 1, 1913, as the basis for depreciation.
The petitioner withdrew the issues as to the correctness of the rates
of depreciation used by respondent.

### FINDINGS OF FACT.

On March 1, 1913, the petitioner was the owner of water works
properties in Paducah, Ky., the total fair market value of which
as a whole was $670,580.  Of this amount $448,040 was the value of
properties subject to exhaustion, wear and tear and obsolescence.

### OPINION.

STERNHAGEN: The plant of the petitioner was built in 1886.  Those
who built it failed and the original records of cost were lost.  The
property was then taken over by a group of business people in
Paducah, and in 1888 a set of books was opened.  The new owners
placed on the books a figure of $189,000 representing plant value,
but this figure was arbitrary and not intended to reflect actual value,
since actual cost was not known and actual value was not attempted
to be ascertained at that time.  The only consideration which seems
to have influenced the figure was the local taxes, and this prompted
a low valuation.  Thereafter it appears that renewals and replace-
ments were charged to expense and additions and enlargements were
charged to construction.  Depreciation seems not to have been ac-
counted for.  The evidence is however not entirely clear as to the
accounting between 1888 and 1913.  The book value of additions on
March 1, 1913, is said to have been about $507,000.

The Commissioner applied depreciation rates prior to March 1,
1913, and found a plant value on that date of $319,600.  This he
used as the basis for computing the depreciation deductible for the
years 1919, 1920, and 1921.  The petitioner contests this and seeks
to establish a value of its assets of $670,580.

In support of its valuation the petitioner introduced evidence of various kinds, all of which is said to converge to the conclusion of the valuation claimed. The respondent introduced no evidence.

The president of the petitioner testified that he had been employed by it since 1897 and was thoroughly familiar with its properties, its accounts and its affairs. In his opinion the plant on March 1, 1913, had a fair market value of " anywhere from $650,000 to $700,000." He formed his opinion by taking into consideration an appraisal made by engineers, the selling price of some of its securities, and the earnings of the corporation for several years prior to 1913.

The appraisal will be discussed later in this opinion. The outstanding securities on March 1, 1913, consisted of $300,000 of capital stock and $297,000 of 6 per cent and 5 per cent bonds. There were occasional trades in stock at par. The 6 per cent bonds sold for something above par and the 5 per cent bonds sold at par. The earnings were:

| | |
|---|---|
| 1910 | $44, 585. 99 |
| 1911 | 45, 866. 02 |
| 1912 | 49, 200. 82 |
| 1913 | 49, 576. 00 |
| Total | 189, 228. 83 |
| Average | 47, 307. 20 |

These earnings would be somewhat modified if proper depreciation had been taken and if no capital items had been charged to expense.

A witness who had for many years been in business as a contractor in Paducah and who had been mayor of the city in 1920 at the time when negotiations were pending for the purchase of the plant by the city, requiring an investigation of its value, and who testified that he was familiar with the plant on March 1, 1913, stated that he thought the fair market value on that date was $650,000. This opinion was based upon his familiarity with the properties and also upon his consideration as mayor of the valuation in 1920 for local tax purposes and because of its probable purchase. In considering the purchase of the plant in 1919 and 1920 the city officials relied upon the appraisal of the plant later discussed and decided that the value therein stated in 1919 was a fair and proper price for its purchase at that time. The purchase was not made because the city was not in a condition to finance it.

The remaining evidence consists principally of an appraisal made by a firm of engineers whose principal occupation for a number of years has been the investigation and appraisal of public utilities in numerous municipalities. This appraisal purports to state " the value of the properties of the Paducah Water Company as it existed on March 1, 1913, and at prices then prevailing." It was introduced

in evidence with the testimony of the witness who inventoried the property and was explained in detail by this witness and two other engineers who were directly responsible for it, and these three witnesses were subjected to cross examination to disclose whatever weaknesses the appraisal might have. The engineers were employed in 1919 to make an inventory and appraisal in connection with the proposal of the City of Paducah to exercise its option under the franchise to purchase the plant from the petitioner at a price to be fixed in accordance with an appraisal to be made by three appraisers. The appraisal was made in the prescribed manner, and suffice it to say that the valuation of 1919 arrived at by these witnesses was substantially in accord with that finally agreed upon. Thereafter, for reasons of financial inability and legal restrictions, the sale was not consummated, although, so far as the record discloses, there was no dispute as to the valuation or its true reflection of a fair price. It embodied a detailed inventory of the company's properties made by actual observation of the physical properties, their plans and specifications and actual measurements. All existing records were examined, both of the company and the city. The property was inspected for its physical condition, records were inspected for its age, and from its age and condition the accrued depreciation was determined. The cost of reproduction was based upon both prewar prices in 1913 and present prices in 1919, and took into consideration as to each item its original cost if available, its capacity, its age, its depreciation, and its condition.

This inventory of 1919 was subsequently used as the basis of valuation of the properties owned on March 1, 1913. An accurate record had been kept of the acquisitions since March 1, 1913, and these were eliminated from the inventory. The reproduction cost was then ascertained by applying unit prices in effect at that date, and from this accrued depreciation was deducted. The resulting figure, it was testified, was substantially the fair market price or value. In numerous instances the actual purchase price of water works plants had been arrived at by taking the cost of reproduction less accrued depreciation. This is a usual method of arriving at a sales price of such properties. A check was also made with experience tables of the per capita cost of water works plants in cities of various sizes, and the valuation in question was found to be lower than that of plants in other cities of comparable size.

The report of the engineers is as follows:

In accordance with your request we have made an Appraisal of the value of the properties of the Paducah Water Co. as it existed on March 1, 1913, and at prices then prevailing.

This Appraisal is based upon a detailed inventory of your property as of October 1, 1919, from which there have been eliminated all items added in the interval between March 1, 1913, and October 1, 1919.

The Appraisal shows the cost new, and accrued depreciation as of March 1, 1913, and the present worth or net physical value as of that date. As you know, cast iron pipe, pumping equipment, and other water works construction items are of relatively long life. We have made a physical inspection of the various items entering into your property, and are of the opinion that the amounts set forth herein, as accrued depreciation for the several items, represents the best measure of the depreciation which the property had suffered up to March 1, 1913.

In the summarization of the detailed figures of the various items, totals are taken to the nearest $10.00, although all details are worked out to the nearest dollar.

The report herein shows the summarization of figures as well as all details entering into their computations.

The following is the summary:

| Item. | Description. | Cost new. | Depre- ciation. | Present worth March 1, 1913. |
|---|---|---|---|---|
| 2 | Real Estate | 52, 500 | 0 | 52, 500 |
| 3 | Intake | 22, 080 | 3, 030 | 19, 050 |
| 4 | Main Station Building | 27, 070 | 3, 150 | 23, 920 |
| 5 | The Brick Stack | 2, 750 | 850 | 1, 900 |
| 6 | The Duplex Units | 8, 000 | 1, 010 | 6, 990 |
| 7 | Six M. G. P. D. DeLaval Low Service Unit | 5, 020 | 490 | 4, 530 |
| 8 | Eight M. G. P. D. DeLaval High Service Unit | 7, 040 | 680 | 6, 360 |
| 9 | Five M. G. P. D. DeLaval High Service Unit | 5, 030 | 490 | 4, 540 |
| 10 | The No. 1 Holly Pumping Engine | 12, 500 | 3, 850 | 8, 650 |
| 11 | The No. 2 Holly Pumping Engine | 17, 500 | 910 | 16, 590 |
| 12 | Auxiliary Equipment | 12, 850 | 1, 070 | 11, 780 |
| 13 | Pipe in Station | 11, 090 | 570 | 10, 520 |
| 14 | Pipe in Station Yard | 6, 260 | 110 | 6, 150 |
| 15 | Boilers in Main Building | 10, 750 | 3, 480 | 7, 270 |
| 16 | The New Boiler House | 14, 110 | 150 | 13, 960 |
| 17 | The Steel Stack | 6, 520 | 450 | 6, 070 |
| 18 | The Stirling Boiler and Stokers | 12, 680 | 460 | 12, 220 |
| 19 | Steel Coagulating Basin | 24, 880 | 2, 770 | 22, 110 |
| 20 | Concrete Coagulating Basin | 29, 730 | 70 | 29, 660 |
| 21 | The Solution House | 2, 600 | 330 | 2, 270 |
| 22 | Filter Building, Filters & Clear Well | 39, 090 | 3, 070 | 36, 020 |
| 23 | The Standpipe | 14, 950 | 4, 900 | 10, 050 |
| 24 | Pipe in Street Mains | 98, 900 | 1, 630 | 97, 270 |
| 25 | Specials in Street Mains | 5, 940 | 100 | 5, 840 |
| 26 | Laying Mains | 60, 030 | 990 | 59, 040 |
| 27 | Cutting Through Pavements | | | |
| 28 | Steam Railroad Crossings | 2, 280 | 40 | 2, 240 |
| 29 | Street Railway Crossings | 1, 170 | 20 | 1, 150 |
| 30 | Miscellaneous Crossings | 310 | 10 | 300 |
| 31 | Valves and Valve Boxes | 3, 250 | 430 | 2, 820 |
| 32 | Fire Plugs | 13, 050 | 1, 710 | 11, 340 |
| 33 | Meters and Meter Vaults | 8, 260 | 830 | 7, 430 |
| 34 | Miscellaneous Inventories | 20, 000 | 0 | 20, 000 |
| | | 558, 190 | 37, 650 | 520, 540 |
| 1 | Preliminary Cost | 8, 370 | 0 | 8, 370 |
| 35 | Engineering & Supervision | 27, 910 | 1, 880 | 26, 030 |
| 36 | Administrative Costs | 11, 160 | 750 | 10, 410 |
| 37 | Contingent Costs | 22, 830 | 1, 510 | 20, 820 |
| | | 627, 960 | 41, 790 | 586, 170 |
| 38 | Lost Interest During Constr | 25, 120 | 1, 670 | 23, 450 |
| | | 653, 080 | 43, 460 | 609, 620 |
| 39 | Going Concern Value 10% | | | 60, 960 |
| | Total | | | $670, 580 |

We have considered all the evidence and have reached the conclusion, in view of the extensive testimony as to the basis of the

valuation arrived at and of the full opportunity given to test its soundness, that the figure of $670,580 is fairly supported by the evidence and represents the fair market value of the petitioner's property on March 1, 1913. This is our judgment, after a proper consideration of all the relevant facts, *Minnesota Rate Cases*, 230 U. S. 352, 434, and not because of any slavish adherence to a rule of cost of reproduction less depreciation, *Georgia Railway Co.* v. *Railroad Commission*, 262 U. S. 625, 630. In this case the cost of reproduction new, less accrued depreciation, was shown to have been carefully and intelligently made and to coincide with fair market value. Taken together with all the other evidence, we may not disregard it and approve instead the depreciated book value used by the respondent, which proceeded from an arbitrary entry made in 1888.

The respondent points to *Kinsman Transit Co.*, 1 B. T. A. 552; *Rockford Malleable Iron Works*, 2 B. T. A. 817; *Tibby-Brawner Glass Co.*, 2 B. T. A. 918; *Knapp & Spencer Co.*, 3 B. T. A. 1243, as cases in which evidence of no less weight was held inadequate to prove value. In *Kinsman Transit Co.*, 1 B. T. A. 552, it was held that an arbitrary rate of depreciation could not be applied without a showing that it fairly reflected actual depreciation of the particular property under consideration. It was said, however, that:

The value of any vessel at a particular time is a question of fact which must be proved by competent evidence. The reconstruction cost less actual depreciation sustained is important evidence of value and has in it important elements to prove either the market value or actual value; but depreciation is ordinarily something to be concretely determined by inspection, and in determining the rate of depreciation to be applied to property of the character herein for the purpose of ascertaining value as of a particular date in the past, it is highly important that the history of the vessel, the character of repairs, the actual use to which the vessel has been put, and all relevant facts tending to show the depreciation sustained be placed before us, and upon these facts, assisted by the testimony of such expert witnesses as may be produced, a fair judgment can be exercised as to the amount of depreciation sustained which will more nearly approximate the actual depreciation sustained than the application of a formula or flat rate of theoretical depreciation which only serves to produce grotesque results.

In the present case these requirements have been met as far as qualified engineers were able to meet them. In *Rockford Malleable Iron Works*, 2 B. T. A. 817, the sole evidence of value was a formal computation to arrive at an assumed cost of reproduction less assumed depreciation. The evidence was to the effect that it did not purport to reflect value, which might have been quite different. In the present case, the history of the sale of water works plants discloses that most of such sales prices are fixed upon the basis of appraisals such as the one before us. The hearsay testimony in *Tibby-Brawner Glass Co.*, 2 B. T. A. 918, is not like the first-hand

statements of the witnesses in the present case. The decision in *Knapp & Spencer Co.*, 3 B. T. A. 1243, does not disclose the evidence, and in matters such as this, requiring a consideration of the weight of the evidence, the absence of an opinion removes it from consideration here. These cases indicate that, in determining questions of fact such as this, each case must be decided upon its own evidence.

Of this total valuation of the plant and business as a whole it is clear there must be some eliminations to arrive at the figure to which annual depreciation deductions shall be applied. The petitioner voluntarily eliminates item 2, real estate, $52,500, and item 39, going concern value 10 per cent, $60,960, leaving the aggregate of the remaining items, $557,120, as the value of the depreciable assets to which it contends the undisputed rate is to be applied. The respondent urges that, in addition to the elimination of the two items mentioned, the depreciable value should be reduced by the elimination of the following items:

| | |
|---|---:|
| 1 Preliminary cost | $8, 370 |
| 34 Miscellaneous inventories | 20, 000 |
| 35 Engineering and supervision | 26, 030 |
| 36 Administrative costs | 10, 410 |
| 37 Contingent costs | 20, 820 |
| 38 Lost interest during construction | 23, 450 |

In this the position of the respondent is sound, and we hold that these items should be eliminated. The petitioner argues that these items are all factors which go to make up the value of its property, and that, since this value is the only issue, it should not be reduced. But this overlooks the real issue, which is the value of such properties as are the subject of the deductions for exhaustion, wear and tear and obsolescence. While it is true, as the evidence shows, that a purchaser of the total properties would include in the purchase price an amount which would reimburse the owner for an assumed expenditure for these intangible items, it does not follow that they represent value of the physical structures. This must be true if it is to be believed that the appraisal correctly sets forth the separate values of the physical properties listed. For if the valuation of each item of physical structure is to be accepted as correct, it can not at the same time be augmented by a proportionate share of the aggregate intangible value; and it likewise follows that if the aggregate valuation of all the physical items added together is correct, it can not at the same time be augmented by the aggregate value of the intangibles and still be correct. Either the value of each physical item would be required to be proportionately augmented— an impracticable task, see *Telephone & Railroad Depreciation Charges*, 118 I. C. C. 295—or the value of the aggregate of physical items would require augmentation by all intangibles. Either of these

hypotheses would assume that the true value of the physical structures had not been correctly stated, an assumption not supported by the testimony. Not all capital investment as of March 1, 1913, is subject to the annual deduction for exhaustion. This is plain as to land and should be equally plain as to intangibles having an uncertain or indefinite life. This does not mean that the investment represented by such items is not recoverable, but only that its recovery must await the ultimate sale or disposition of the property instead of coming out of annual income.

We have therefore found as a fact, in accordance with this opinion, that the basis for the depreciation at the agreed rate is $448,040, which is the remainder after subtracting from the total value of $670,580 the sum of $222,540, representing the eight items aforesaid.

*Judgment will be entered on 15 days' notice, under Rule 50.*

TRAMMELL concurs in the result only.