1312

CLINTON COTTON MILLS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54880.  Promulgated August 31, 1933.

*Donald Horne, Esq.*, for the petitioner.
*James K. Polk, Jr., Esq.*, for the respondent.

OPINION.

LANSDON: The respondent has asserted deficiencies in income tax for the years 1927, 1928, and 1929 in the respective amounts of $3,583.40, $4,292.82, and $1,341.03.  For its causes of action the petitioner alleges (1) that the Commissioner has not used the fair market values of assets that it owned at March 1, 1913, as the basis for computing depreciation thereon; (2) that the rate at which Commissioner computed depreciation on secondhand machinery acquired after March 1, 1913, is inadequate; (3) that it is entitled to deductions as ordinary and necessary expenses for certain disbursements in the taxable years which the Commissioner has capitalized; (4) that an inadequate rate of depletion has been allowed on the cost of plumbing installed in tenement houses which it owns; (5) that it is entitled to annual depreciation deductions from its income on account of the cost of pavements, curbing, and sidewalks which it constructed in its mill village; and (6) that it is entitled to deduct the value of certain abandoned property from its income in one of the taxable years.

The petitioner is a corporation engaged in textile manufacturing at Clinton, South Carolina.  It was organized in 1899.  Its first mill was completed in 1897, the second in 1907 and by 1913 the plant consisted of two mill buildings and machinery and other property as follows: 1,430 looms, 64,480 spindles, 136 carders, 16 pickers, 18 drawing frames, 12 slubbers, 60 fly frames or speeders, a power house, eight warehouses, and a mill village of 155 tenement houses.  During the taxable years the plant was materially the same as in 1913.  For purposes of computing depreciation the properties are grouped into three general classifications, viz., mill buildings, machinery, and mill village.

A schedule is in evidence showing dates of acquisition, correct balance of investment at the end of each year from 1897 to 1929, and the dates and amounts of additions and reductions as to all the depre-

ciable assets owned by petitioner at March 1, 1913, and in the taxable years, and is incorporated in this report by reference. This schedule shows that at March 1, 1913, the depreciated costs of petitioner's machinery, mill buildings, and tenement houses were $823,848.97, $173,034.29, and $56,055.18, respectively. Upon such amounts as bases, with due consideration for additions, abandonments, and complete exhaustion of costs by prior allowable depreciation, the respondent has computed depreciation deductions for the taxable years in the respective amounts of $65,352.13, $74,817.66, and $80,350.60, which are in excess of the deductions claimed by the petitioner in its income tax returns for the same years in the respective amounts of $25,879.65, $33,015.87, and $30,296.56.

The mill buildings are of brick and when constructed had an expected useful life of 50 years; the average life of new machinery used by petitioner is 28½ years from the date of installation; and the tenement houses, when new, had an expected useful life of 25 years. The Commissioner has computed allowable depreciation deductions on the costs of the several classes of assets at the rate of 2, 3½ and 4 percent, respectively, for the mill buildings, machinery, and mill village.

The petitioner expended $28,981.50 during 1927 and 1928 for plumbing in its mill village. In 1927 it repaired the roofs of the tenement houses in such village at a cost of $995 for shingles. In 1927 it acquired certain used machinery at a cost of $51,992.49 and in the same year abandoned water taps installed at a cost of $258.64. In 1927, 1928, and 1929 it expended the amounts of $21,717.05, $1,146.05, and $16,793.52 for paving streets and sidewalks and approaches to its mill village.

The petitioner accepts the rates of depreciation determined by the respondent in so far as they apply to the several categories of assets when acquired new. It contends, however, that the 1913 fair market values of the properties owned at that time are greatly in excess of the depreciated costs as reflected on its books of account as of that date. If such greater values are established by the evidence it is also necessary to show the remaining useful life of the assets as of March 1, 1913. In proof of the alleged market value at the basic date it adduced the testimony of its president and several qualified expert witnesses. Each was of the opinion that the fair market value of the properties was greater than the basis used by the respondent in computing the amounts of depreciation already allowed.

Upon cross-examination each of the witnesses admitted that his opinion was based upon the reproductive cost of the entire plant, less depreciation sustained between the acquisition of the various assets and March 1, 1913, except that one witness seemed to base

his conclusion on the estimated value of a cotton mill at that date computed at $28 per spindle. Even this witness admitted that his opinion was based on a reproductive cost of $35 per spindle, less depreciation, and the weight of his opinion was materially lessened in cross-examination by showing that cotton mills had been sold not far away from 1913 at much lower prices per spindle. The reproductive cost used as the basis for such opinion was determined by a retrospective appraisal made in 1921. It has been repeatedly held by the Board and by the courts that reproductive cost is of little evidentiary weight in the determination of fair market value. In *Standard Oil Co. of New Jersey* v. *Southern Pacific Co.*, 268 U.S. 146, the Court considered the measure of damages for property destroyed by a wrongful act, held it to be the " market value " of the property and said that such value is " the same that in all probability would result from fair negotiations between an owner willing to sell and the purchaser desiring to buy," citing *Brook-Scanlon Corp.* v. *United States*, 256 U.S. 106. After stating that cost of reproduction at date of valuation is evidence to be considered, the Court continued :

It is to be borne in mind that value is the thing to be found, and that neither cost of reproduction new, nor that less depreciation, is the measure or sole guide. The ascertainment of value is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts. *Minnesota Rate Cases*, 230 U.S. 352, 434.

The respondent contends that reproduction cost new, less depreciation, is not competent evidence to establish fair market value. We do not agree that such value is not evidence to be considered in the ascertainment of values. *Southwestern Bell Telephone Co.* v. *Public Service Commission*, 262 U.S. 276. In our opinion, however, it has very little weight. In *National Packing Corp.*, 24 B.T.A. 952, we held as follows:

The first issue in this proceeding concerns the basis for computing depreciation for all the years here in question on the depreciable assets acquired by petitioner at the time of its organization. As of January 1, 1922, petitioner entered these assets on its books at values based on the appraisal made August 1, 1921. This appraisal, probably made for insurance purposes, purports to be based upon costs of reproduction, new, both for the buildings and for the machinery and equipment, and from these reproduction costs a " depreciation value " was computed. But, neither in the appraisal itself nor in the other evidence in the case, does it appear that the theoretical values set up in the appraisal are the fair market values of the various assets at that time, and therefore the appraisal is not determinative of those values. * * * The value of the assets when acquired by petitioner is a question of fact and cannot be determined by this theoretical computation, even though the computation starts with a reproductive value based upon cost of similar property. *Market value is a definite thing and it may have no particular relation to replacement*

*cost, and is in no wise determined by it.* See *Kinsman Transit Co.,* 1 B.T.A. 552; *Valley Steamship Co.,* 1 B.T.A. 1107; *Rockford Malleable Iron Works,* 2 B.T.A. 817; *Frost Manufacturing Co.,* 13 B.T.A. 802. On the whole record petitioner has failed to establish that the values at which the fixed assets were set up on its books were the fair market values thereof at the time it acquired them. The respondent's determination is sustained as to this issue. [Italics supplied.]

In the light of the authorities above cited and after due consideration as to the weight of all evidence adduced by the petitioner, we are of the opinion that the presumption of correctness which attaches to the respondent's determination has not been overcome. See *Chicago Ry. Equipment Co.,* 4 B.T.A. 452; affd., 39 Fed. (2d) 378; and 282 U.S. 295; *National Straw Works,* 16 B.T.A. 463; affd., 47 Fed. (2d) 463. It is now well established that if the value of depreciable property at March 1, 1913, exceeds cost, the remaining useful life thereof must be proved as a prerequisite to increasing the rate of depreciation. There is no evidence of record upon which we can base findings of the remaining useful life of petitioner at March 1, 1913. On this issue the determination of the respondent is affirmed. *Estate of Leon C. Riggs,* 2 B.T.A. 668; *Kaufman Straus Co.,* 2 B.T.A. 718; *Geo. S. Scoville,* 2 B.T.A. 813.

Petitioner also contends for an adjustment of allowable depreciation on secondhand machinery acquired in 1927 at a cost of $51,992.49. The only proof of the remaining useful life of such assets when acquired is a statement by the secretary of the petitioner that a part thereof was constructed in 1918. There is no evidence of its condition when acquired in 1927. On this issue the respondent is affirmed.

The expenditures for plumbing in the tenement houses of the mill village in 1927 and 1928 were capital outlays which the petitioner is entitled to recover on the basis of the unexpired useful life of the structures in which such plumbing was installed. *Shillito Realty Co.,* 8 B.T.A. 665; affd., 39 Fed. (2d) 830; see also *Hess Brothers,* 7 B.T.A. 729. The record contains sufficient facts for a recomputation under Rule 50 as to this claim. The cost of shingles used in repairing the roofs of the tenements in 1927 was ordinary expense and is a proper deduction from petitioner's gross income for that year. The respondent admits error in disallowing a loss of $258.27 in 1927 and that amount, therefore, should be deducted from petitioner's gross income in such year.

The petitioner's last contention is that it should be allowed to amortize the cost of paving and sidewalks incurred in the improvement of its mill village in the several taxable years. If these improvements were on the streets of Clinton dedicated to public use, the cost of paving is not amortizable; *F. M. Hubbell Son & Co.,* 19 B.T.A. 612; affd., 51 Fed. (2d) 644; certiorari denied, 284 U.S.

664; if on its own property and used in its business, it is entitled to recover its investment therein by ratable annual deductions from income. There is no evidence of record upon which we can base a finding of fact as to either situation. The determination of the respondent is affirmed.

*Decision will be entered under Rule 50.*